IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

DENNIS EVAN FALLOW, as Personal
Representative of the ESTATE OF
KATHERINE FALLOW

    Case No. 1:11-cv-03088-CL

        Plaintiff,

    v.

    **ORDER**

BANKERS LIFE AND CASUALTY
COMPANY,

        Defendant.

CLARKE, Magistrate Judge.

    This matter comes before the court on plaintiff's motion for attorney fees (#93). Plaintiff Dennis Evan Fallow ("plaintiff") originally filed this diversity action on April 14, 2011, in the Josephine County Circuit Court. On July 27, 2011, defendant Bankers Life and Casualty Company ("Bankers") removed the case to federal court (#1). Both parties executed written consent to entry of judgment by a magistrate judge (#26) and, after discovery and several amendments to the complaint, filed motions for summary judgment (#44, 48). On January 15,

Page 1 – ORDER

2013, the court granted plaintiff's motion for partial summary judgment, and granted in part and denied in part defendant's motion for summary judgment (#79). Bankers subsequently made an offer of judgment (#87) pursuant to Federal Rule of Civil Procedure ("FRCP") 68 in the amount of $40,230.23, exclusive of attorney fees and costs. Plaintiff accepted, and the court entered judgment (#88) for plaintiff in the amount of $40,230.23, plus reasonable costs and attorney fees to be determined pursuant to FRCP 54. Plaintiff then filed a motion for attorney fees (#93). For the reasons stated below, the court awards plaintiff attorney fees in the amount of $51,068.55.

## BACKGROUND

This action arises out of a dispute between the parties concerning the availability of insurance coverage. Bankers issued a long-term care insurance policy to Katherine Fallow, plaintiff's son and the personal representative of her estate. Bankers denied reimbursement for certain care providers, and subsequently plaintiff sued Bankers for breach of contract, bad faith, and fraud. The court granted summary judgment to plaintiff on its breach of contract claim, and granted summary judgment to Bankers on plaintiff's bad faith and fraud claims.

Plaintiff now requests attorney fees in the amount of $101,673.25 pursuant to ORS § 742.061.[1] Bankers argues that plaintiff should receive $7,500 in attorney fees, reflecting only the amount of work done by plaintiff's counsel through April 20, 2011, the date Bankers made a settlement offer. Bankers argues that if the court chooses to award fees for work beyond April 20, 2011, plaintiff's fees should be reduced because (1) only one of plaintiff's three claims was successful; (2) plaintiff's counsel's hourly rates were higher than the customary hourly rate for the area; (3) plaintiff's counsel utilized block billing and vague descriptions of work; and (4) plaintiff's counsel charged for routine clerical work.

---

[1] Plaintiff's motion for attorney fees requests $108,348.75 in fees. Plaintiff's reply in support of their motion, however, modifies the request to $101,673.25, reducing the time that plaintiff alleges it spent on its unsuccessful bad faith and fraud claims. Pltf. Reply in Supp. of Mot., pp. 4-5.

Page 2 – ORDER

## STANDARDS

In a diversity case, the law of the state where the district court sits determines entitlement to attorney fees. Carnes v. Zamani, 488 F.3d 1057, 1059 (9th Cir. 2007) (internal citation omitted). In this case, plaintiff seeks attorney fees pursuant to ORS § 742.061, which provides in relevant part:

> [I]f settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon.

When these statutory requirements are met, the court must grant attorney fees. Petersen v. Farmers Ins. Co. of Or., 162 Or.App. 462, 466 (1999). Once the court decides to grant attorney fees, the court must determine the reasonableness of the award based on a two-part inquiry prescribed by ORS § 20.075. McCormick & Schmick's Seafood Rest., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Civ. No. 08-1011-AA, 2011 WL 4625728, at *4 (D.Or. Sept. 30, 2011) (citations omitted). Specifically, the court must consider the factors identified in ORS § 20.075(1) in combination with the eight factors set forth in ORS § 20.075(2). Id. The court must list the factors or briefly explain the reasons for its decision. Id.

ORS § 20.075(1) requires courts to consider the following factors when determining the reasonableness of a fee request:

(a) The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith, or illegal.
(b) The objective reasonableness of the claims and defenses asserted by the parties.
(c) The extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases.
(d) The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.

(e) The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.
(f) The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.
(g) The amount that the court has awarded as a prevailing party fee under ORS § 20.190
(h) Such other factors as the court may consider appropriate under the circumstances.

The second part of the two-part inquiry requires the court to consider the following factors listed in ORS § 20.075(2):

(a) The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services.
(b) The likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases.
(c) The fee customarily charged in the locality for similar legal services.
(d) The amount involved in the controversy and the results obtained.
(e) The time limitations imposed by the client or the circumstances of the case.
(f) The nature and length of the attorney's professional relationship with the client.
(g) The experience, reputation and ability of the attorney performing the services.
(h) Whether the fee of the attorney is fixed or contingent.

## DISCUSSION

### I. Apportionment of Fees

"When a party prevails in an action that encompasses both a claim for which attorney fees are authorized and a claim for which they are not, the trial court must apportion attorney fees, except when there are issues common to both claims." Bennett v. Baugh, 164 Or.App. 243, 247 (1999) (citing Greb v. Muarray, 102 Or.App. 573, 576 (1990)). When the claims contain common legal issues, however, the court need not apportion fees, because "the party entitled to fees would have incurred roughly the same amount of fees irrespective of the additional claim or claims." Id. at 248 (citing Freedland v. Trebes, 162 Or.App. 374, 378-79 (1999)).

Page 4 – ORDER

Here, plaintiff is entitled to attorney fees pursuant to ORS § 742.061 for its breach of contract claim. Section 742.061 does not, however, authorize fees related to a tort claim against an insurer. Goddard v. Farmers Ins. Co., 177 Or.App. 621, 625 (2001). The parties do not contest that plaintiff's tort claims contain legal issues separate from the breach of contract claim. They dispute, however, the amount of time spent on the bad faith and fraud claims. Plaintiff contends that he spent only $6,667.50 in fees incurred for these claims and the remaining $101,673.25 on "litigating [Bankers'] breach of contract claim and battling Bankers' litigation tactics." Pltf. Reply in Supp. of Mot., p. 4. Bankers argues that plaintiff spent more than $6,667.50 on these claims, arguing that the amount should include the costs for plaintiff's Second Request for Production, which was primarily focused on plaintiff's bad faith and fraud claims.

Having reviewed the relevant entries, the court agrees with Bankers that the fees related to plaintiff's Second Request for Production should not be included in plaintiff's award. The Second Request for Production largely focused on obtaining Bankers' policy and procedure manual, materials reflecting Bankers' coordination with the Oregon Home Health Care Commission, and other documents regarding Bankers' compliance that related to plaintiff's bad faith and fraud claims. Accordingly, the court reduces plaintiff's award an additional 23 hours for the spent preparing the Second Request for Production, for a fee reduction of $4,556.[2]

## II.   ORS § 20.075(1)(a)-(b)

The court finds that the conduct of the parties in the transactions that gave rise to the litigation was reasonable. At its core, this case involved a dispute about the applicability of an

---

[2] See entries dated 4/2/12, 4/13/12, 4/14/12, 4/16/12 (two entries), 4/18/12, 4/21/12, 4/25/12, 4/26/12, 4/27/12, 4/30/12, 5/23/12, 6/11/12, 6/12/12, 7/2/12, 7/6/12, and 7/9/12.

Page 5 -- ORDER

insurance policy. At no point did either party engage in any activity that can be characterized as "reckless, willful, malicious, in bad faith or illegal." ORS § 20.075(1)(a).

While factor (a) is neutral, however, factor (b) weighs in favor of Bankers. Plaintiff's tort claim of bad faith, which asserts that Bankers acted in bad faith by refusing to reimburse the cost of certain care providers, is not supported by Oregon case law. As the court noted in its order on the parties' dispositive notions, it is well-settled that"[a]n insurer's bad faith refusal to pay policy benefits to its insured sounds in contract and is not an actionable tort in Oregon." Emp'rs Fire Ins. Co. v. Love It Ice Cream Co., 64 Or.App 784, 791 (1983).

Despite the court's order finding against plaintiff on its bad faith claim, plaintiff continues to argue that this claim has support in Oregon law. In the briefing in support of the motion for attorney fees, plaintiff cites to McKie v. Sears Prot. Co., No. CV 10-1531-PK, 2011 WL 1587112 (D.Or. Feb. 22, 2011), for the principle that "tort claims based on conduct that also breaches a contractual obligation are actionable in certain circumstances." Pltf. Reply in Supp. of Mot., p. 7. This case does not support plaintiff's claim. McKie centered on the repair of a furnace protected by an extended service plan sold by defendants. 2011 WL 1587112, at *1. Sears, in an effort to repair the plaintiffs' furnace, sent five different repair technicians to the plaintiffs' home over a nearly four-month period. Id. One of the repair technicians dispatched by Sears failed to close a flue pipe valve, causing the plaintiffs to suffer headaches from the furnace exhaust. Id. Ruling on Sears' motion for summary judgment, the court found that the plaintiffs could proceed on a breach of contract claim for failing to timely fix the furnace, and on a negligence claim for physically injuring the plaintiffs by leaving the flue pipe valve open. Id. at *9. The court emphasized that the negligence claim should survive summary judgment

because "one of Sears' employees committed an *independent* act of negligence" beyond the breach of contract claim. Id.

In the case at hand, in contrast, plaintiff did not allege an independent act of negligence separate from Bankers' contractual duties. The crux of the bad faith claim is that Bankers wrongly denied coverage for the care of certain providers – the same as the premise for plaintiff's breach of contract claim. Because plaintiff's bad faith claim is unsupported by case law and is thus unreasonable, factor (b) weighs in favor of Bankers.

### III.  ORS § 20.075(1)(c)-(e)

The court finds factors (c), (d), and (e) to be neutral.

### IV.  ORS § 20.075(1)(f)

Factor (f) falls in Bankers' favor. Bankers made an objectively reasonable settlement offer relatively early into the case. On April 20, 2011, Bankers sent plaintiff an email entitled "SETTLEMENT OFFER" and stating that Bankers would "honor past claims for covered services rendered through the current date, as long as the services have been provided by caregivers with qualifications at least equal to those held by Ms. Davis and Ms. Watters." Huffer Affidavit, Ex. A. The email also stated that Bankers would "pay properly documented claims going forward for covered services," up to $58,400, and that Bankers would work with plaintiff separately to resolve attorney fees and costs. Id.

On April 25, 2011, Bankers, having not heard from plaintiff, sent plaintiff a second email asking whether plaintiff had received the settlement offer. Plaintiff replied the same day stating that he had just received the settlement offer email. Plaintiff did not communicate further about the offer, and on July 27, 2011, plaintiff filed his complaint in state court. The parties proceeded with discovery and the filing of dispositive motions. In January 2013, the court ruled on the

parties' dispositive motions. On July 8, 2013, the court entered judgment for Bankers in the amount of $40,230.23, representing the entirety of unpaid claims under the policy.

Plaintiff responds that it acted reasonably in failing to respond to the April 20, 2011, settlement offer because the offer's terms were vague. Specifically, plaintiff argues that they did not know how Bankers would construe the meaning of "qualifications at least equal to those held by Ms. Davis and Ms. Watters," thus leaving open the possibility that Bankers would not cover all of the caregivers who had served Katherine Fallow.

The court disagrees with plaintiff's characterization of the settlement offer. This case centered on whether Linda Davis, a health care worker certified by the state of Washington, and Lorrie Watters, a health care worker listed on the Oregon Home Health Care Commission's website, met the policy's definition of a "Qualified Home Health Care Provider." In February 2011, Bankers had told plaintiff in a letter that registered nurses, licensed practical nurses, and certified nurse aides were "Qualified Home Health Care Providers." As of April 2011, the care providers other than Linda Davis and Lorrie Watters were, purportedly, certified nursing assistants ("CNAs"). Bankers' statement that they would reimburse plaintiff for caregivers with qualifications "at least equal to those held by Ms. Davis and Ms. Watters" would, then, clearly cover reimbursement for the services of these providers. Moreover, if plaintiff did believe that the terms of the settlement were unclear, he could have asked for clarification regarding coverage for the other caregivers or proposed a more precise settlement offer.

ORS § 20.075(1)(f) requires the court to consider the "objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute." In this case, Bankers' settlement offer was reasonable. It provided coverage for Katherine Fallow's caregivers through the settlement date, and did not preclude plaintiff from seeking attorney fees

Page 8 – ORDER

and costs. Plaintiff's failure to respond to Bankers' settlement offer was unwarranted, and resulted in several years of litigation and fee request more than double the amount of the judgment.

## V.     ORS § 20.075(1)(g)

Plaintiff does not seek a prevailing party fee.

## VI.    ORS § 20.075(1)(h)

Factor (h) authorizes the court to consider other appropriate circumstances. Bankers contends that the court should consider the reasonableness of the requested fees due to plaintiff's practice of block billing. Block billing in this district is "any single time entry of three or more hours containing four or more tasks, or containing only two tasks where one of the tasks could have taken from a small to a substantial period of time." Orme v. Burlington Coat Factory of Or., LLC, No. CV 07-859-MO, 2010 WL 1838740, at *6, n. 3 (D.Or. May 3, 2010). In its "Message from the Court Regarding Fee Petitions," the district cautions attorneys against block billing as it prevents the court from properly assessing the reasonableness of the fees. See http://www.ord.uscourts.gov/index.php/court-policies-517/fee-petitions (last updated February 6, 2013). To prevent block billing, the District "recommends that members of the bar record time spent on particular, individual tasks and support their fee petitions with a level of documentation that allows the Court, and opposing counsel, to adequately review the reasonableness of the time spent on a single task." Id. Having carefully reviewed the time entries from plaintiff, the court finds that plaintiff has over one hundred hours of time entries that meet this district's definition of block billing, for fees totaling $19,760.50.[3] The court reduces these fees by 50%, for a total reduction of $9,880.25.

---

[3] See entries dated 9/8/10, 9/9/10, 3/2/11, 3/11/11, 8/16/11, 8/17/11, 11/3/11, 2/21/12, 3/27/12, 3/29/12, 6/13/12, 7/11/12, 7/13/12, 7/25/12, 8/16/12, 9/4/12, 9/12/12, 9/13/12, 9/14/12, 11/8/12, 11/19/12, and 11/20/12.

Page 9 – ORDER

The court also agrees with Bankers that many of plaintiff's entries are not adequately detailed. The "Message from the Court Regarding Fee Petitions" also cautions against "time billed for items such as 'conference,' 'telephone call with...', or 'correspondence to...' with no description of the subject of the conference, the call, or the correspondence." The court notes that a number of entries meet this description. On October 7, 2010, for example, attorney Chris Cauble billed 1.5 hours, for a cost of $375, for "Telephone conference with opposing party; Letter from Same; Conference with Legal Assistant." Cauble Aff., Ex. 1, p. 1. The court cannot assess the reasonableness of entries such as this when the subject of the work is not identified. The court notes 33 instances of vague entries similar to the one described, for a total of 19.18 hours at a cost of $4,598.50.[4] The court also reduces these fees by 50%, for a total reduction of $2,229.25.

Bankers also argues that some of plaintiff's entries are redundant. Attorneys from one firm who conference together may not both charge the client for their time. See West Linn Corporate Park, LLC v. City of West Linn, No. CV-01-1787-HZ, 2011 WL 4708774, at *13. That is, "[w]hen attorneys hold a telephone or personal conference with another attorney or paralegal, good 'billing judgment' mandates that only one participant in the conference should bill the conference to the client." Nat'l Warranty Ins. Co. v. Greenfield, No. CV-97-1654-ST, 2011 WL 34045734, at *5 (D.Or. Feb. 8, 2001). As Bankers points out, there are at least four occasions where plaintiff's counsel double-billed for speaking with one another, for a minimum of overlapping fees of $600.[5]

---

[4] See entries dated 10/7/10, 10/11/10, 12/9/10, 1/20/11, 2/24/11, 4/19/11, 5/5/11, 7/1/11, 7/11/11, 7/13/11, 7/21/11, 8/30/11, 9/22/11, 9/27/11, 10/6/11, 11/9/11, 11/28/11, 11/29/11, 1/3/12, 6/6/12, 6/28/12, 7/17/12 (two entries), 10/8/12, 10/10/12, 10/24/12, 11/7/12, 11/20/12, 12/11/12, 2/1/13, 4/9/13, and 7/2/13.
[5] See entries dated 8/1/11, 7/23/12, 9/14/12, and 10/3/12.

Page 10 – ORDER

## VII.   ORS § 20.075(2)(a)-(b)

Plaintiffs' time is not well-documented, and the court questions whether litigation should have proceeded after Bankers' April 2011 settlement offer. However, with the exception of the time spent on plaintiff's bad faith claim, the court finds that plaintiff's time was reasonable on the whole. While this was a fairly representative insurance contract dispute, it did require substantial work from plaintiff. The court finds that plaintiff generally handled the difficulty of the questions well and had the skills needed to properly perform the legal services.

The court does find, however, that some entries by plaintiff's counsel's legal assistants should be excluded from the award. "[T]asks that are secretarial or clerical in nature, such as proofreading, indexing, or assembling documents, are not compensable because they are overhead and thus already 'reflected in the hourly billing rate.'" Old W. Fed. Credit Union v. Skillman, No. 2:11-CV-01170-SU, 2012 WL 4594256, at *4 (D.Or. Sept. 6, 2012) (citing Frevach Land D. v. Multnomah Cnty., Dep't of Envtl. Servs., 2011 WL 34039133, at *12 (D.Or. Dec. 18, 2011)), *adopted by* 2012 WL 4509989 (D.Or. Oct. 1, 2012). Here, many of the legal assistants' entries contain work that was clerical, such as preparing correspondence. The court accordingly reduces the fee award by $1,114.75, which reflects entries for clerical tasks.[6]

## VIII.   ORS § 20.075(2)(b)

Because there is no evidence that this case precluded plaintiffs' attorney from taking other work, this factor does not weigh in the court's decision.

## IX.   ORS § 20.075(2)(c)

The party seeking fees has the burden to show "the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and

---

[6] See entries dated 7/21/11, 8/8/12, 8/9/12, 8/16/12, 10/2/12, 10/5/12, 12/4/12, 6/27/12, and 7/2/13. Several other entries involved clerical tasks, but were previously excluded as block billing.

Page 11 – ORDER

reputation." Jordan v. Multnomah Cnty., 815 F.2d 1258, 1263 (9th Cir. 1987). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." United Steelworkers of Am. v. Phelps Dodge Corp., 896 F.2d 403, 407 (9th Cir. 1990). The initial benchmark for attorney rates in this court is the Oregon State Bar ("OSB") Economic Survey. Sterling Sav. Bank v. Sequoia Crossing, Civ No. 09-55-AC, 2010 WL 3210855, at *8 (D.Or. Aug. 11, 2010) (citation omitted). The most recent OSB Survey is from 2012. For work done in 2013, the rate of inflation from 2012 to 2013 is one percent. Oregon Realty Co. v. Greenwich Inc. Co., No. 3:12-cv-00200-MO, 2013 WL 3287092, at *4 (D.Or. June 28, 2013). The average rate provides a starting point, which may be adjusted to account for factors such as experience, reputation, and the ability of the attorney performing the service. Id., citing ORS § 20.075(2)(g).

In this case, the court questions the support for the hourly rate of attorney Rachele Selvig. Ms. Selvig was admitted to the Oregon state bar in October of 2009 and to the U.S. District Court for the District of Oregon in 2010. Bolen Decl. in Resp. to Mot., p. 4. Using the OSB survey, the average state-wide hourly billing rate for an attorney with between zero and three years of experience is $156. Regionally, the average rate for attorneys with this amount of experiences varies, from $128 for an attorney in the Lower Valley on the lower end to $182 for an attorney in Portland on the higher end.[7] Ms. Selvig seeks $200 per hour for her work. Plaintiffs provides the declaration of Christopher Cauble in support of the hourly rate, which states that "[b]illing for attorney Rachele Selvig was at the higher end of the Oregon percentile range for attorneys in practice 0-3 years based on her significant professional experience before

---

[7] The hourly rate for a southern Oregon attorney with zero to three years of experience is not listed in the OSB Survey.

entering the practice of law." Cauble Aff. in Supp. of Mot, p. 3. The affidavit does not, however, describe Ms. Selvig's prior professional experience or how it contributed to her work on this case. Bankers has provided an affidavit from Medford attorney Charles Bolen, which states that $200 for an attorney in southern Oregon with no more than three years of experience is an unreasonable rate and that $156 "would be more in line with what is seen in Southern Oregon." Bolen Decl. in Resp. to Mot., p. 4. Mr. Bolen also notes that the present case is Ms. Selvig's first litigated case in the U.S. District Court for the District of Oregon. Id.

The court does not question Ms. Selvig's competence or the reputation of the Cauble & Cauble firm, but agrees with Bankers that plaintiff has not met its burden of providing an explanation for such a substantial deviation from the base rates that the OSB Survey provides for attorneys with commensurate experience. Accordingly, the court determines that an hourly rate of $175 is appropriate for Ms. Selvig. Calculating Ms. Selvig's hourly rate at $175/hour,[8] the court reduces Ms. Selvig's billed time by $3,664.75.

### X.  ORS § 20.075(2)(d)

Here, plaintiff originally sought $500,000 in economic damages, non-economic damages of $500,000, and punitive damages of $5 million. Plaintiff ultimately obtained a settlement of $40,230.23, representing less than one percent of the recovery originally sought. While plaintiff is the prevailing party, its success was limited in light of his original request.

### XI.  ORS § 20.075(2)(e)-(h)

Neither party has provided evidence related to factors (e), (f), and (h). The court finds factor (g) to be neutral.

---

[8] The court calculated Ms. Selvig's rate for 146.58 hours of work, which does not include hours reduced for block billing, vague entries, or work related to the bad faith and fraud claims.

Page 13 – ORDER

## XII. Summary

The court reduces plaintiff's requested award of $101,673.25 by $4,556 for additional time spent on unsuccessful claims, $8,880.25 for block billing, $2,229.25 for entries where the subject of the work is not specified, $600 for double-billing, $1,114.75 for clerical tasks, and $3,664.75 for a reduction in Ms. Selvig's hourly rate. The court finds that a further reduction of 40%, or $34,045.70, is appropriate due to plaintiff's rejection of Bankers' reasonable settlement offer and plaintiff's limited success in light of his initial demand.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for attorney fees (#93) is granted in part and denied in part. The court awards fees in the amount of $51,068.55.

IT IS SO ORDERED.

DATED this 11 day of September, 2013

MARK D. CLARKE
United States Magistrate Judge